UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PAUL BARRERA and ANGELA BOVO, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

BOEING EMPLOYEES CREDIT UNION,

Defendant.

NO.

**CLASS ACTION COMPLAINT**

**JURY DEMAND**

## CLASS ACTION COMPLAINT

Plaintiffs, Paul Barrera and Angela Bovo, individually and on behalf of the classes of persons preliminarily defined below, make the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiffs, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      Plaintiffs bring this action on behalf of themselves and classes of all similarly situated consumers against Defendant, Boeing Employees Credit Union ("BECU"), arising from its routine practices of (a) assessing Overdraft Fees ("OD Fees") on transactions that did not

CLASS ACTION COMPLAINT - 1

actually overdraw checking accounts; and (b) charging two or more Non-Sufficient Funds Fees ("NSF Fee") on a single transaction.

2.      BECU misleadingly and deceptively misrepresents each of the above practices, including in its own account contracts. BECU also omits material facts pertaining to each of the above practices, including in its account contracts.

3.      This is a civil action seeking monetary damages, restitution, and declaratory and injunctive relief.

4.      As described herein, Defendant's practices violate Washington statutory and common law, as well as the Defendant's own form contracts.

5.      Defendant's improper scheme to extract funds from account holders has victimized Plaintiffs and hundreds of other similarly situated consumers. Unless enjoined, Defendant will continue to engage in these schemes and will continue to cause substantial injury to its consumers.

## PARTIES

6.      Plaintiff Paul Barrera is an individual and resident of Shoreline, Washington.

7.      Plaintiff Angela Bovo is an individual and resident of Sammamish, Washington.

8.      Defendant, Boeing Employees Credit Union, is a Washington credit union and one of the nation's largest credit unions. It has over $20 billion in assets and maintains several branches throughout Washington.

## JURISDICTION AND VENUE

9.      This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of

CLASS ACTION COMPLAINT - 2

interest and costs, and at least one of the members of the proposed class is a citizen of a different state than the Defendant.

10.    Venue is proper in this district pursuant to 28 U.S.C. §1391 because Defendant is subject to personal jurisdiction here and conducts business in Washington and because a substantial part of the events or omission giving rise to the claims asserted herein occurred in this district.

## BACKGROUND FACTS

**I.    BECU Charges OD Fees on Transactions that Do Not Actually Overdraw the Account**

**A.    Overview of Claim**

11.    Plaintiff Bovo brings this action challenging BECU's practice of charging OD Fees on what is referred to in this complaint as "Authorize Positive, Purportedly Settle Negative Transactions," or "APPSN Transactions."

12.    Here's how it works. At the moment debit card transactions are authorized on an account with positive funds to cover the transaction, BECU immediately reduces consumers' checking accounts for the amount of the purchase, sets aside funds in a checking account to cover that transaction, and as a result, the consumer's displayed "available balance" reflects that subtracted amount. As a result, customers' accounts will always have sufficient funds available to cover these transactions because BECU has already sequestered these funds for payment.

13.    However, BECU still assesses crippling $25 OD Fees on many of these transactions and mispresents its practices in its account documents.

14.    Despite putting aside sufficient available funds for debit card transactions at the time those transactions are authorized, BECU later assesses OD Fees on those same transactions

CLASS ACTION COMPLAINT - 3

when they purportedly settle days later into a negative balance. These types of transactions are APPSN Transactions.

15.    BECU maintains a running account balance in real time, tracking funds consumers have for immediate use. This running account balance is adjusted, in real-time, to account for debit card transactions at the precise instance they are made. When a customer makes a purchase with a debit card, BECU sequesters the funds needed to pay the transaction, subtracting the dollar amount of the transaction from the customer's available balance. Such funds are not available for any other use by the account holder and such funds are specifically associated with a given debit card transaction.

16.    Indeed, the entire purpose of the immediate debit and hold of positive funds is to ensure that there are enough funds in the account to pay the transaction when it settles:

> When a consumer uses a debit card to make a purchase, a hold may be placed on funds in the consumer's account to ensure that the consumer has sufficient funds in the account when the transaction is presented for settlement. This is commonly referred to as a "debit hold." During the time the debit hold remains in place, which may be up to three days after authorization, those funds may be unavailable for the consumer's use for other transactions.

Federal Reserve Board, Office of Thrift Supervision, and National Credit Union Administration, Unfair or Deceptive Acts or Practices, 74 FR 5498 (Jan. 29, 2009).

17.    That means when any *subsequent*, intervening transactions are initiated on a checking account, they are compared against an account balance that has already been reduced to account for any earlier debit card transactions. This means that many subsequent transactions incur OD Fees due to the unavailability of the funds sequestered for those debit card transactions.

18.    Still, despite ***always*** reserving sufficient available funds to cover the transactions and keeping the held funds off-limits for other transactions, BECU improperly charges OD Fees on APPSN Transactions.

CLASS ACTION COMPLAINT - 4

19.    The Consumer Financial Protection Bureau ("CFPB") has expressed concern with this very issue, flatly calling the practice "unfair" and/or "deceptive" when:

> [A] financial institution authorized an electronic transaction, which reduced a customer's available balance but did not result in an overdraft at the time of authorization; settlement of a subsequent unrelated transaction that further lowered the customer's available balance and pushed the account into overdraft status; and when the original electronic transaction was later presented for settlement, because of the intervening transaction and overdraft fee, the electronic transaction also posted as an overdraft and an additional overdraft fee was charged. Because such fees caused harm to consumers, one or more supervised entities were found to have acted unfairly when they charged fees in the manner described above. Consumers likely had no reason to anticipate this practice, which was not appropriately disclosed. They therefore could not reasonably avoid incurring the overdraft fees charged. Consistent with the deception findings summarized above, examiners found that the failure to properly disclose the practice of charging overdraft fees in these circumstances was deceptive.
>
> At one or more institutions, examiners found deceptive practices relating to the disclosure of overdraft processing logic for electronic transactions. Examiners noted that these disclosures created a misimpression that the institutions would not charge an overdraft fee with respect to an electronic transaction if the authorization of the transaction did not push the customer's available balance into overdraft status. But the institutions assessed overdraft fees for electronic transactions in a manner inconsistent with the overall net impression created by the disclosures. Examiners therefore concluded that the disclosures were misleading or likely to mislead, and because such misimpressions could be material to a reasonable consumer's decision-making and actions, examiners found the practice to be deceptive. Furthermore, because consumers were substantially injured or likely to be so injured by overdraft fees assessed contrary to the overall net impression created by the disclosures (in a manner not outweighed by countervailing benefits to consumers or competition), and because consumers could not reasonably avoid the fees (given the misimpressions created by the disclosures), the practice of assessing the fees under these circumstances was found to be unfair.

Consumer Financial Protection Bureau, "Supervisory Highlights" (Winter 2015).

20.    There is no justification for these practices, other than to maximize BECU's OD Fee revenue. APPSN Transactions only exist because intervening checking account transactions supposedly reduce an account balance. But BECU is free to protect its interests and either reject those intervening transactions or charge OD Fees on those intervening transactions—and it does

CLASS ACTION COMPLAINT - 5

the latter to the tune of millions of dollars each year. But BECU was not content with these millions in OD Fees. Instead, it sought millions *more* in OD Fees on these APPSN Transactions.

21.    Besides being deceptive, unfair, and unconscionable, these practices breach contract promises made in BECU's adhesion contracts, which fundamentally misconstrue and mislead consumers about the true nature of BECU's processes and practices. BECU also exploits its contractual discretion by implementing these practices to gouge its customers.

22.    In plain, clear, and simple language, the checking account contract documents covering OD Fees promise that BECU will only charge OD Fees on transactions that have insufficient funds to cover those transactions.

23.    In short, BECU is not authorized by contract to charge OD Fees on transactions that have not overdrawn an account, but it has done so and continues to do so.

**B.    Mechanics of a Debit Card Transaction**

24.    A debit card transaction occurs in two parts. First, authorization for the purchase amount is instantaneously obtained by the merchant from BECU. When a merchant or customer physically or virtually "swipes" a customer's debit card, the credit card terminal connects, via an intermediary, to BECU, which verifies that the customer's account is valid and that sufficient available funds exist to cover the transaction amount.

25.    At this step, if the transaction is approved, BECU immediately decrements the funds in a consumer's account and sequesters funds in the amount of the transaction but does not yet transfer the funds to the merchant.

26.    Sometime thereafter, the funds are actually transferred from the customer's account to the merchant's account.

CLASS ACTION COMPLAINT - 6

27.     BECU (like all banks and credit unions) decides whether to "pay" debit card transactions at authorization. After that, BECU is obligated to pay the transaction no matter what. For debit card transactions, that moment of decision can only occur at the point of sale, when the transaction is authorized or declined. It is at that point—and only that point—when BECU may choose to either pay the transaction or to decline it. When the time comes to actually transfer funds for the transaction to the merchant, it is too late for the credit union to deny payment—the bank has no discretion and must pay the charge. This "must pay" rule applies industry wide and requires that, once a financial institution authorizes a debit card transaction, it "must pay" it when the merchant later makes a demand, regardless of other account activity. *See* Electronic Fund Transfers, 74 Fed. Reg. 59033-01, 59046 (Nov. 17, 2009).

28.     There is no change—no impact whatsoever—to the available funds in an account when this step occurs.

### C.     BECU's Account Contract

29.     Plaintiffs have BECU checking accounts, which are currently governed by BECU's standardized "Account Agreements" document ("Deposit Agreement"). Ex. A.

30.     The Deposit Agreement and relevant contract documents covering OD Fees provide that BECU will not charge OD Fees on transactions that have sufficient funds to cover them at the time they are initiated.

31.     BECU promises that "available" funds is the balance used to determine overdrafts. BECU also promises that overdrafts are determined at the moment it decides to "permit" a transaction and when it "authorizes and pays" a debit card transaction:

> Withdrawal Restrictions **We are required to permit a withdrawal, honor any item, complete a POS transfer, or pay any other EFT, or ATM/bit transaction only if you have sufficient available funds in your Account to cover the full amount of the transaction or you have funds available to cover**

CLASS ACTION COMPLAINT - 7

**the transaction** as described in the "Overdrafts" section. **In our sole discretion, we may honor any item, in which case you agree to pay the NSF fee set forth in the Consumer Account Disclosure, regardless of whether we decide to pay or dishonor the item**. If there are sufficient available funds to cover some but not all of your withdrawal orders or items, we may allow those withdrawals for which there are sufficient available funds in any order.

[…]

If you maintain your Checking Account in good standing and are not in default or delinquent on any BECU account, . . . [A]s a courtesy and only after we receive and confirm your prior consent, **we may authorize and pay everyday debit card POS transactions that will overdraw your account (when you use your debit card for payment)**. If you choose to opt out of this service you are responsible for any overdrawn balances at the time of opting out. . . . Even though we may have previously authorized and paid transactions that overdraw your account, at our own discretion we may decline such transactions at any time. You may be notified of any authorized and paid transaction that causes your account to become overdrawn. Additionally, you may be notified of transactions declined when there are not sufficient funds in your account. But we have no obligation to notify you before we authorize and pay or decline any transaction. The overdrawn amount in your account plus any overdraft fee(s) (as disclosed in the Consumer Account Disclosure) are due and payable upon demand.

(emphasis added).

33.    For APPSN Transactions, which are immediately deducted from a positive account balance and held aside for payment of that same transaction, there are always funds to "cover" those transactions—yet BECU assesses OD Fees on them anyway.

33.    The above promises indicate that transactions are only overdraft transactions when they are authorized and approved into a negative account balance. Of course, that is not true for APPSN Transactions.

34.    In fact, BECU actually authorizes transactions on positive funds, sets those funds aside on hold, then fails to use those same funds to post those same transactions. Instead, it uses a secret posting process described below.

CLASS ACTION COMPLAINT - 8

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

35.     The above representations and contractual promises are untrue. In fact, BECU charges OD Fees even when sufficient funds exist to cover transactions that are authorized into a positive balance. No express language in any document states that BECU may impose OD Fees on any APPSN Transactions.

36.     The account documents also misconstrue BECU's true debit card processing and overdraft practices.

37.     First, and most fundamentally, BECU charges OD Fees on debit card transactions for which there are sufficient funds available to "use" to cover the transactions.

38.     BECU assesses OD Fees on APPSN Transactions that *do* have sufficient funds available to "cover" them throughout their lifecycle.

39.     BECU's practice of charging OD Fees even when sufficient available funds exist to cover a transaction violates its contractual promise not to do so. This discrepancy between BECU's actual practice and the contract causes consumers like Plaintiff to incur more OD Fees than they should.

40.     Next, sufficient funds for APPSN Transactions are actually debited from the account immediately, consistent with standard industry practice.

41.     Because these withdrawals take place upon initiation, the funds cannot be re-debited later. But that is what BECU does when it re-debits the account during a secret batch posting process.

42.     In reality, BECU's actual practice is to assay the same debit card transaction twice to determine if the transaction overdraws an account—both at the time a transaction is authorized and later at the time of settlement.

CLASS ACTION COMPLAINT - 9

43.     At the time of settlement, however, an available balance *does not change at all* for these transactions previously authorized into good funds. As such, BECU cannot then charge an OD Fee on such transaction because the available balance has not been rendered insufficient due to the pseudo-event of settlement.

44.     Upon information and belief, something more is going on: at the moment a debit card transaction is getting ready to settle, BECU does something new and unexpected, during the middle of the night, during its nightly batch posting process. Specifically, BECU releases the hold placed on funds for the transaction for a split second, putting money back into the account, then re-debits the same transaction a second time.

45.     This secret step allows it to charge OD Fees on transactions that never should have gotten them—transactions that were authorized into sufficient funds, and for which BECU specifically set aside money to pay them.

46.     This discrepancy between BECU's actual practices and its contract's representations causes consumers to incur more OD Fees than they should.

47.     In sum, there is a huge gap between BECU's practices as described in the account documents and BECU's actual practices.

**D.     BECU Abuses Contractual Discretion**

48.     BECU's treatment of debit card transactions to charge OD Fees is not simply a breach of the express terms of the numerous account documents. In addition, BECU exploits contractual discretion to the detriment of account holders when it uses these policies.

49.     The term "to cover" a transaction is not defined in the account documents. BECU uses its discretion to define "to cover" in a manner contrary to any reasonable, common sense understanding of that term. In BECU's implied definition, a balance is insufficient to "cover" a

CLASS ACTION COMPLAINT - 10

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

transaction even if BECU sequesters sufficient available funds for that transaction at the time it is made.

50.     Moreover, BECU uses its contractual discretion to cause APPSN Transactions to incur OD Fees by knowingly authorizing later transactions that it allows to consume available funds previously sequestered for APPSN Transactions.

51.     BECU uses all of these contractual discretion points unfairly to extract OD Fees on transactions that no reasonable consumer would believe could cause OD Fees.

**E.**     **Reasonable Consumers Understand Debit Card Transactions Are Debited Immediately**

52.     The assessment of OD Fees on APPSN Transactions is fundamentally inconsistent with immediate withdrawal of funds for debit card transactions. That is because if funds are immediately debited, they cannot be depleted by intervening transactions (and it is that subsequent depletion that is the necessary condition of APPSN Transactions). If funds are immediately debited, then, they are necessarily applied to the debit card transactions for which they are debited.

53.     BECU was and is aware that this is precisely how account holders reasonably understand debit card transactions to work.

54.     BECU knows that many consumers prefer debit cards for these very reasons. Consumer research indicates that consumers prefer debit cards as a budgeting device because they don't allow debt like credit cards do and because the money comes directly out of a checking account.

55.     Consumer Action, a national nonprofit consumer education and advocacy organization advises consumers determining whether they should use a debit card that "[t]here is no grace period on debit card purchases the way there is on credit card purchases; the money is

CLASS ACTION COMPLAINT - 11

immediately deducted from your checking account. Also, when you use a debit card you lose the one or two days of 'float' time that a check usually takes to clear." *What Do I Need to Know About Using a Debit Card?*, ConsumerAction (Jan. 14, 2019), https://www.consumer-action.org/helpdesk/articles/what_do_i_need_to_know_about_using_a_debit_card.

56.    Further, Consumer Action informs consumers that "Debit cards offer the convenience of paying with plastic without the risk of overspending. When you use a debit card, you do not get a monthly bill. You also avoid the finance charges and debt that can come with a credit card if not paid off in full." *Understanding Debit Cards*, ConsumerAction, http://www.consumer-action.org/english/articles/understanding_debit_cards (last visited July 16, 2019).

57.    This understanding is a large part of the reason that debit cards have risen in popularity. The number of terminals that accept debit cards in the United States has increased by approximately 1.4 million in the last five years, and with that increasing ubiquity, consumers have viewed debit cards (along with credit cards) "as a more convenient option than refilling their wallets with cash from an ATM." Maria LaMagna, *Debit Cards Gaining on Case for Smallest Purchases*, MarketWatch (Mar. 23, 2016), http://www.marketwatch.com/story/more-people-are-using-debit-cards-to-buy-a-pack-of-gum-2016-03-23.

58.    Not only have consumers increasingly substituted debit cards for cash, but they believe that a debit card purchase is the fundamental equivalent of a cash purchase, with the swipe of a card equating to handing over cash, permanently and irreversibly.

59.    BECU was aware of the consumer perception that debit transactions reduce an available balance *at a specified time and in a specified order*—namely, the moment they are actually initiated—and BECU's account agreement only supports this perception.

CLASS ACTION COMPLAINT - 12

**F.      Plaintiff Bovo's Debit Card Transactions**

60.      As an example, Plaintiff Bovo's account was assessed two $25 OD Fees on debit card transactions on February 6, 2015 for transactions that settled that day. However, those transactions were authorized into a *positive* account balance prior to that date.

61.      Because BECU had previously sequestered the funds to cover that transaction, Plaintiff Bovo's account had sufficient funds to cover the transaction.

## II.      BECU CHARGES TWO OR MORE NSF FEES ON THE SAME ITEM

62.      As alleged more fully herein, BECU's account documents allow it to take certain steps when an account holder attempts a transaction but does not have sufficient funds to cover it. Specifically, BECU may (a) authorize the transaction and charge a *single* $25 OD Fee; or (b) reject the transaction and charge a *single* $25 NSF Fee.

63.      In contrast to its account documents, however, BECU regularly assesses two or more NSF Fees on the *same* item or transaction.

64.      This abusive practice is not universal in the financial services industry. Indeed, major banks like Chase—the largest consumer bank in the country—do not undertake the practice of charging more than one NSF Fee on the same item when it is reprocessed. Instead, Chase charges one NSF Fee even if a transaction is resubmitted for payment multiple times.

65.      BECU's account documents never disclose this practice. To the contrary, BECU's account documents indicate it will only charge a single NSF Fee on an item or per transaction.

**A.      Plaintiff Barrera's Experience**

66.      In support of his claims, Plaintiff Barrera offers an example of NSF Fees that should not have been assessed against his checking accounts. As alleged below, BECU: (a)

CLASS ACTION COMPLAINT - 13

reprocessed a previously declined a transaction; and (b) charged a fee to reprocess the transaction, which Plaintiff Berrera never requested.

67.    On July 28, 2017, Plaintiff Barrera attempted an ACH payment to Paypal.

68.    BECU rejected payment of that transaction due to insufficient funds in Plaintiff Barrera's account and charged him a $25 NSF Fee for doing so. Plaintiff does not dispute the initial fee, as it is allowed by BECU's account documents.

69.    On August 3, 2017, unbeknownst to Plaintiff Barrera and without his request to BECU to retry the transaction, BECU processed the same transaction yet again and called it a "RETRY PYMT" on the bank statement. Again BECU rejected the transaction due to insufficient funds and charged Plaintiff Barrera *another* $25 NSF Fee.

70.    *In sum, BECU charged Plaintiff Barrera $50 in fees to attempt to process a single electronic payment.*

71.    Plaintiff Barrera understood the payment to be a single transaction as is laid out in the BECU contract, capable at most of receiving a single NSF Fee (if BECU returned it) or a single OD Fee (if BECU paid it).

**B.    The Imposition of Multiple NSF Fees on a Single Transaction Violates BECU's Express Promises and Representations**

72.    The Deposit Agreement provides the general terms of Plaintiffs' relationship with the BECU, and BECU makes explicit promises and representations therein regarding how transactions will be processed, as well as when NSF Fees and OD Fees may be assessed.

73.    The Deposit Agreement contains explicit terms indicating that NSF Fees will only be assessed once per transaction or item, when in fact BECU regularly charges two or more NSF Fees per transaction or item even though a customer only requested the payment or transfer once.

CLASS ACTION COMPLAINT - 14

74.    BECU's account documents indicate that a singular NSF Fee can be assessed on checks, ACH debits, and electronic payments.

75.    BECU's account documents state that it will charge $25 per item or transaction that is returned due to insufficient funds.

76.    According to the BECU Consumer Account Disclosure ("Fee Schedule"):

**As a not-for-profit credit union we are committed to offering fewer-to-no fees.**

. . .

Non-Sufficient Funds (NSF) Fees[] NSF Fee $25.00 per transaction for which the available balance is not sufficient for checks and/or ACH payments; fee will be charged if check and/or ACH payment is paid or returned unpaid.

Ex. B, at 2 (Fee Schedule).

77.    The Fee Schedule states that a *single* fee will be assessed on "checks and/or ACH payments."

78.    Further, the Fee Schedule makes clear that, for all transaction types (whether debit card, check, ACH, or other transaction), only a single NSF Fee or OD Fee can be charged. Indeed, more than one OD Fee is impossible for transactions like debit card transactions, which can only possibly be paid or rejected one time. Using language identical to the language its uses to describe NSF Fees, BECU's Fee Schedule states:

Overdraft * $25.00 per debit card transaction for which the available balance is not sufficient and the transaction is paid (Optional Courtesy Pay Overdraft Service for Debit Transactions Opt-In required before Overdraft fee will be charged).

Ex. B at 2.

79.    In short, most of the transactions and fee types covered by the Fee Schedule can only occur once, and there is no warning that a certain type of transaction or fee can happen more than once.

CLASS ACTION COMPLAINT - 15

80.    Further, the Deposit Agreement repeatedly states that at most a single NSF Fee may be assessed on transactions:

> We will process debit and credit Automatic Clearing House ("ACH") transactions throughout the day, in the order they are received in our processing center. Therefore, if an Account withdrawal or debit transaction is processed in the morning and it exceeds your available Account balance at that time, **you may be charged _a_ non-sufficient funds (NSF) fee,** even if a deposit or credit transaction occurring later that day raises your available balance above $0.00. We may receive multiple credit or debit transactions on your Accounts in many different forms throughout each day. The best way to know how much money you have available to spend, and to avoid paying NSF fees, is to record and track all your transactions closely.
>
> . . .
>
> Withdrawal Restrictions We are required to permit a withdrawal, honor any item, complete a POS transfer, or pay any other EFT, or ATM/bit transaction only if you have sufficient available funds in your Account to cover the full amount of the transaction or you have funds available to cover the transaction as described in the "Overdrafts" section. **In our sole discretion, we may honor any item, in which case you agree to pay the NSF fee set forth in the Consumer Account Disclosure, regardless of whether we decide to pay or dishonor the item**.
>
> . . .
>
> **If we return an item or decline a transaction for nonsufficient funds, you will be charged _an_ NSF fee.** We have no obligation to notify you if we return an item or decline a transaction for nonsufficient funds.
>
> . . .
>
> We will process ACH transactions throughout the day, which may include debits and credits. You must keep sufficient funds in your Accounts at all times because debits and credits may occur throughout the day. We may receive multiple deposit or credit and withdrawal or debit transactions on your accounts in many different forms throughout each day. **If a withdrawal or debit occurs when there are insufficient available funds, you may be charged _an_ NSF fee whether that transaction is processed or not.** Although any subsequent deposit or credit transactions made later that same day may bring the available account balance above $0.00, the prior NSF fee will remain on the account. The best way to know how much money you have available to spend, and to avoid paying NSF fees, is to record and track all your transactions closely.

Ex. A at 7, 9, 11, 19 (emphasis added).

CLASS ACTION COMPLAINT - 16

81.     The same "check and/or ACH payment" on an account cannot conceivably become a new one each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit them.

82.     There is zero indication anywhere in BECU's account documents that the same "check and/or ACH payment" is eligible to incur multiple NSF Fees.

83.     Even if BECU reprocesses an instruction for payment, it is still the same "check and/or ACH payment." Its reprocessing is simply another attempt to effectuate an account holder's original order or instruction.

84.     The disclosures described above never discuss a circumstance where BECU may assess multiple NSF Fees for a single check or ACH transaction that was returned for insufficient funds and later reprocessed one or more times and returned again.

85.     In sum, BECU promises that one $25 NSF Fee will be assessed per electronic payment or check, and these terms must mean all iterations of the same instruction for payment. As such, BECU breached the contract when it charged more than one fee per item.

86.     Reasonable consumers understand any given authorization for payment to be one, singular "check and/or ACH payment," as those terms are used in BECU's account documents.

87.     Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same "check and/or ACH payment," which BECU will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere does BECU disclose that it will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees, nor do BECU customers ever agree to such fees or practices.

CLASS ACTION COMPLAINT - 17

88.    Customers reasonably understand, based on the language of the Deposit Agreement and BECU's other account documents, that its reprocessing of checks or ACH payments are simply additional attempts to complete the original order or instruction for payment and as such will not trigger additional NSF Fees. In other words, it is always the same item or transaction.

89.    Banks and credit unions like BECU that employ this abusive practice know how to plainly and clearly disclose it. Indeed, other banks and credit unions that do engage in this abusive practice disclose it expressly to their account holders—something Defendant here never did.

90.    For example, First Citizens Bank, a major institution in the Carolinas, engages in the same abusive practice as BECU, but at least expressly states:

> Because we may charge a service fee for an NSF item each time it is presented, **we may charge you more than one service fee for any given item**. All fees are charged during evening posting. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

*Deposit Account Agreement*, First Citizen's Bank (Sept. 2018), https://www.firstcitizens.com/ personal/banking/deposit-agreement (emphasis added).

91.    First Hawaiian Bank engages in the same abusive practices as Defendant, but at least currently discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

*Terms and Conditions of FHB Online Services*, First Hawaiian Bank 40, https://www. fhb.com/ en/assets/File/Home_Banking/FHB_Online/Terms_and_Conditions_of_FHB_Online_Services _RXP1.pdf (last accessed July 17, 2019) (emphasis added).

92.    Klein Bank similarly states in its online banking agreement:

[W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.

*Special Handling/Electronic Banking Disclosures of Charges*, First Financial Bank 2 (Aug. 2018), https://www.bankatfirst.com/content/dam/first-financial-bank/eBanking_Disclosure _of_ Charges.pdf.

93.    BECU provides no such disclosure, and in so doing, deceives its account holders.

**C.    The Imposition of Multiple NSF Fees on a Single Transaction Breaches BECU's Duty of Good Faith and Fair Dealing**

94.    Parties to a contract are required not only to adhere to the express conditions in the contract but also to act in good faith when they are invested with a discretionary power over the other party. In such circumstances, the party with discretion is required to exercise that power and discretion in good faith. This creates an implied promise to act in accordance with the parties' reasonable expectations and means that BECU is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, BECU has a duty to honor transaction requests in a way that is fair to Plaintiffs and its other customers and is prohibited from exercising its discretion to pile on even greater penalties on the depositor.

CLASS ACTION COMPLAINT - 19

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

95.    Here—in the adhesion agreements BECU foisted on Plaintiffs and its other customers—BECU has provided itself numerous discretionary powers affecting customers' credit union accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, BECU abuses that discretion to take money out of consumers' accounts without their permission and contrary to their reasonable expectations that they will not be charged multiple fees for the same transaction.

96.    BECU exercises its discretion in its own favor—and to the prejudice of Plaintiff and its other customers—when it reprocesses a transaction when it knows a customer's account lacks funds and then charges additional NSF Fees on a single item. Further, BECU abuses the power it has over customers and their accounts and acts contrary to their reasonable expectations under the Deposit Agreement. This is a breach of BECU's implied covenant to engage in fair dealing and act in good faith.

97.    Further, BECU maintains complete discretion not to assess NSF Fees on transactions at all. As alleged in the previous paragraph, an NSF Fee "may" be assessed on certain "transactions." By exercising its discretion in its own favor—and to the prejudice of Plaintiffs and other customers—by charging more than one NSF Fee on a single "transaction," BECU breaches the reasonable expectation of Plaintiffs and other customers and in doing so violates the implied covenant to act in good faith.

98.    It was bad faith and totally outside Plaintiffs' reasonable expectations for BECU to use its discretion to assess two or more NSF Fees for a single attempted payment.

99.    When BECU charges multiple NSF Fees, BECU uses its discretion to define the meaning of "check and/or ACH payment" in an unreasonable way that violates common sense

CLASS ACTION COMPLAINT - 20

and reasonable consumer expectations. BECU uses its contractual discretion to set the meaning of those terms to choose a meaning that directly causes more NSF Fees.

100.    Moreover, BECU provides itself discretion to refuse to reprocess transactions that are initially rejected. It abuses that discretion to repeatedly resubmit transactions and to charge fees each time.

## CLASS ACTION ALLEGATIONS

101.    <u>Description of the Classes</u>: Plaintiffs bring this class action on behalf of themselves and classes of persons ("the Classes") defined as follows:

> All consumers who, during the applicable statute of limitations, were charged OD Fees on debit card transactions that did not overdraw a BECU checking account (the "National APPSN Class")

> All consumers who, during the applicable statute of limitations, were charged multiple NSF Fees on the same item on a BECU checking account (the "National Multiple NSF Class")

102.    Excluded from the Classes are Defendant's officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns. Also excluded from the Classes are any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

103.    The time period for each of the Classes is the number of years immediately preceding the date on which this Complaint was filed as allowed by the applicable statute of limitations, going forward into the future until such time as BECU remedies the conduct complained of herein.

104.    <u>Numerosity</u>: The members of the proposed Classes are so numerous that individual joinder of all members is impracticable. The exact number and identities of the members of the proposed Classes are unknown at this time and can be ascertained only through

CLASS ACTION COMPLAINT - 21

1    appropriate discovery. Plaintiffs estimate the number of members in each Class to be in the

2    thousands.

3        105.    <u>Common Questions of Law and Fact Predominate</u>: There are many questions of

4    law and fact common to Plaintiffs and the Classes, and those questions substantially predominate

5    over any questions that may affect individual Class members. Common questions of law and fact

6    include:

7            A.    Whether BECU breached its own contract by charging OD Fees on

8                  transactions that did not overdraw an account and whether it charged

9                  multiple NSF Fees on a single transaction;

10           B.    Whether BECU charged OD Fees on transactions that did not overdraw

11                 an account and whether it charged multiple NSF Fees on a single

12                 transaction;

13           C.    Whether BECU breached the covenant of good faith and fair dealing;

14           D.    The proper method or methods by which to measure damages; and

15           E.    The declaratory and injunctive relief to which the Classes are entitled.

16       106.    <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the members of the

17   Classes. Plaintiffs and all members of the Classes have been similarly affected by BECU's

18   actions.

19       107.    <u>Adequacy of Representation</u>: Plaintiffs will fairly and adequately represent and

20   protect the interests of the Classes. Plaintiffs have retained counsel with substantial experience

21   in prosecuting complex and consumer class action litigation. Plaintiffs and their counsel are

22   committed to vigorously prosecuting this action on behalf of the Classes and have the financial

23   resources to do so.

24

CLASS ACTION COMPLAINT - 22

108.    <u>Superiority of Class Action</u>: Plaintiffs and the members of the Classes suffered, and will continue to suffer, harm as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the Classes is impractical. Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the Class members.

109.    <u>Risk of Inconsistent or Varying Adjudication</u>: Class action treatment is proper, and this action should be maintained as a class action because the risks of separate actions by individual members of the Classes would create a risk of: (a) inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct for the BECU as the parties opposing the Classes; and/or (b) adjudications with respect to individual Class members would, as a practical matter, be dispositive of the interests of other Class members not party to the adjudication or would substantially impair or impede their ability to protect their interests.

110.    <u>Action Generally Applicable to Class as a Whole</u>: BECU, as the party opposing the Classes, has acted or refused to act on grounds generally applicable to the Classes, thereby

CLASS ACTION COMPLAINT - 23

making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

### FIRST CLAIM FOR RELIEF
**Breach of Contract, Including Breach of the Covenant of Good Faith and Fair Dealing**
**(On Behalf of All Classes)**

111.    Plaintiffs incorporate by reference the preceding paragraphs.

112.    Plaintiffs and BECU have contracted for banking services, as embodied in BECU's account documents.

113.    All contracts entered by Plaintiffs and the Classes are identical or substantively identical because BECU's form contracts were used uniformly.

114.    BECU has breached the express terms of its own agreements as described herein.

115.    Under the law of states where BECU does business, good faith is an element of every contract. All contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

116.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain and abuse of a power to specify terms.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

117.    BECU abused the discretion it granted to itself when it charged OD Fees on transactions that did not overdraw an account and when it charged more than one NSF Fee on a single item.

118.    In these and other ways, Defendant violated its duty of good faith and fair dealing.

119.    Defendant willfully engaged in the foregoing conduct for the purpose of (1) gaining unwarranted contractual and legal advantages; and (2) unfairly and unconscionably maximizing fee revenue from Plaintiffs and other members of the Classes.

120.    Plaintiffs and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the agreements.

121.    Plaintiffs and members of the Classes have sustained damages as a result of Defendant's breaches of the parties' contracts and breaches of contract through violations of the covenant of good faith and fair dealing.

**SECOND CLAIM FOR RELIEF**
**Violations of the Washington Consumer Protection Act, RCW 19.86.010, *et seq.***
**(On Behalf of All Classes)**

122.    Plaintiffs incorporate by reference the preceding paragraphs.

123.    Washington's Consumer Protection Act, RCW Ch. 19.86 ("CPA"), protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

124.    To achieve that goal, the CPA prohibits any person from using "unfair methods of competition or unfair or deceptive acts or practices in the conduct of any trade or commerce . . .". RCW 19.86.020.

125.    Plaintiffs and members of the Classes are "persons" as defined in RCW 19.86.010(1).

CLASS ACTION COMPLAINT - 25

126.    Defendant BECU is a "person" as defined in RCW 19.86.010(1).

127.    As alleged herein, BECU's routine policies and practices of (a) assessing OD Fees on transactions that did not actually overdraw checking accounts; and (b) charging two or more NSF Fees on a single transaction violate the CPA because they are both unfair and deceptive.

128.    BECU's policies and practices are deceptive and unfair because BECU misleadingly and actively omits material facts and deceptively misrepresents each of the above practices, including in its own account documents.

129.    BECU's conduct was deceptive. By failing to honestly disclose its true overdraft practices and policies to consumers, BECU made affirmative misrepresentations and omissions of material fact, and thus, engaged in deceptive acts or practices.

130.    BECU conduct was also unfair. BECU's practice of charging OD Fees on transactions that did not actually overdraw checking accounts, was and is likely to cause substantial injury to consumers in the form of excessive, additional OD Fees. These OD Fees, charged on transactions that did not actually overdraw accounts, were not reasonably avoidable by consumers and not outweighed by countervailing benefits.

131.    In addition, BECU's practice of charging two or more NSF Fees on a single transaction was also unfair, as it was and is likely to cause substantial injury to consumers in the form of excessive, multiple NFS Fees. Consumers could not reasonably avoid these NSF Fees which were not outweighed by countervailing benefit, as consumers took no action to resubmit such transactions, but were nonetheless charged multiple NSF Fees.

132.    Had Plaintiffs and members of the Classes been aware that they were going to be charged NSF Fees and OD Fees in the manner BECU assessed, Plaintiffs and members of the

CLASS ACTION COMPLAINT - 26

1    Classes would not have entered into such transactions and would not have incurred additional or

2    multiple OD Fees and NSF Fees.

3          133.    As a direct and proximate result of BECU's unfair and deceptive acts and

4    practices in violation of the CPA, Plaintiffs and members of the Classes have incurred more OD

5    Fees and NSF Fees than they should have, and have suffered monetary damages for which BECU

6    is liable.

7          134.    Plaintiffs and members of the Classes seek actual damages plus interest on

8    damages at the legal rate, as well as all other just and proper relief afforded by the CPA. As

9    redress for BECU's repeated and ongoing violations, Plaintiffs and members of the Classes are

10   entitled to, *inter alia*, actual damages, treble damages, attorney's fees, and injunctive relief.

11

12                           **PRAYER FOR RELIEF**

13         WHEREFORE, Plaintiffs on their own behalf and on behalf of the Classes respectfully

14   request that the Court:

15   (a)    Certify this case as a class action, designating Plaintiffs as class representatives

16          and designating the undersigned as Class Counsel;

17   (b)    Award Plaintiffs and the Classes actual, statutory, and punitive damages in an

18          amount to be proven at trial;

19   (c)    Award Plaintiffs and the Classes restitution in an amount to be proven at trial;

20   (d)    Award Plaintiffs and the Classes pre-judgment interest in the amount permitted

21          by law;

22   (e)    Award Plaintiffs and the Classes attorneys' fees and costs as permitted by law;

23   (f)    Declare BECU's practices outlined herein to be unlawful and a breach of contract;

24

CLASS ACTION COMPLAINT - 27

(g)     Enjoin BECU from engaging in the practices outlined herein;

(h)     Grant Plaintiffs and the Classes a trial by jury;

(i)     Grant leave to amend these pleadings to conform to evidence produced at trial; and

(j)     Grant such other relief as the Court deems just and proper.

### JURY DEMAND

Plaintiffs demand trial by jury.

DATED this 1st day of August, 2019.

TOUSLEY BRAIN STEPHENS PLLC

By: _s/ Kim D. Stephens_
        Kim D. Stephens, WSBA #11984

By: _s/ Cecily C. Shiel_
        Cecily C. Shiel, WSBA #50061

1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
Telephone:  206.682.5600/Fax: 206.682.2992
Email:      kstephens@tousley.com
                cshiel@tousley.com

Jeffrey Kaliel*
Sophia Gold*
KALIEL PLLC
1875 Connecticut Avenue NW, 10th Floor
Washington, DC 20009
Telephone: (202) 250-4783
Email:      jkaliel@kalielpllc.com
                sgold@kalielpllc.com

Lynn A. Toops*
COHEN & MALAD, LLP
One Indiana Square
Suite 1400
Indianapolis, IN 46204

CLASS ACTION COMPLAINT - 28

Telephone: 317-636-6481
Facsimile: 317-636-2593
Email:      ltoops@cohenandmalad.com

J. Gerard Stranch, IV*
Martin F. Schubert*
BRANSTETTER, STRANCH
& JENNINGS, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Telephone: (615) 254-8801
Facsimile: (615) 255-5419
Email:      gerards@bsjfirm.com

Christopher D. Jennings*
THE JOHNSON FIRM
2226 Cottondale Lane, Suite 210
Little Rock, AR 72202
Phone: (501) 372-1300
Email:      chris@yourattorney.com

*Pro Hac Vice Applications to be Submitted

**Attorneys for Plaintiffs and the Putative Class**

6642/001/540222.1

CLASS ACTION COMPLAINT - 29